UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK A. CARTWRIGHT,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>MAURICE JUNIOUS,<br><br>　　　　Respondent. | Case No.: 1:12-cv-00045-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

Petitioner is a state prisoner proceeding pro se/through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation serving a determinate sentence of twenty years and four months. (Doc. 13, Lodged Documents ("LD") 4, p. 2). He was sentenced to prison after being convicted by a jury of two counts of robbery (Cal. Pen. Code §§ 212.5(c), 1192.7(c)(19)), one count of assault with a firearm (Cal. Pen. Code §§ 245(a)(2), 1192.7(c)(8)), and two counts of possession of a firearm by an ex-felon. (Cal. Pen. Code § 12021(a)(1)). The trial court also found that Petitioner had suffered a prior prison term as to each substantive count, thus subjecting him to an enhancement pursuant to Cal. Pen. Code § 667.5(b). (Id.). The jury found true that Petitioner had personally used a firearm as to the robbery and assault counts pursuant to Cal. Pen. Code § 12022.5(a). (Id.).

1

Petitioner appealed his conviction to the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the trial court. (LD 4). Petitioner then filed a petition for review in the California Supreme Court which was summarily denied. (LD 5; 6).

From April 7, 2011 through November 30, 2011, Petitioner filed state habeas petitions in, respectively, the Kern County Superior Court (LD 7), the 5th DCA (LD 9), and the California Supreme Court (LD 11). All three petitions were denied. (LD 8; 10; 12).

On January 10, 2012, Petitioner filed the instant petition. (Doc. 1). Respondent's answer was filed on July 27, 2012. (Doc. 12). Respondent does not contend that any of the three grounds for relief in the petition have not been fully exhausted. (Doc. 12, p. 7). On October 3, 2012, Petitioner filed his Traverse. (Doc. 14).

## **FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

The following facts are taken verbatim from the probation officer's report filed April 10, 2009:

"**Counts One, Three, and Four**

"On April 25, 2008, at approximately 8:29 p.m., deputies were dispatched to the JD Market regarding a robbery that occurred.

"Upon arrival, contact was made with Jasveer Kaur, the victim. She appeared to be crying and was holding the back of her head. A deputy interviewed the victim and she stated that a male subject, later identified as Derrick Antron Cartwright, the defendant, entered the convenience store wearing a mask over his face. The defendant approached the victim as she was seated behind the counter in a chair. He ordered her to open the cash register and pointed a silver firearm at her. The victim indicated she became scared, opened the register, and gave the defendant approximately $100 to $150 in United States currency.

"Following this, the defendant reached behind the victim and took a stack of 'The Big Cheese' California lottery tickets. After retrieving the lottery tickets, the defendant struck the victim in the head with the firearm prior to fleeing in an unknown direction. The victim stated she recognized the man's voice and stature as being a frequent customer who lives in the area.

"Personnel from the Kern County Fire Department arrived and offered to treat the victim; however, she declined medical aid.

"On November 21, 2008, detectives interviewed the victim. She positively identified the defendant as the subject who robbed her at gun point on April 25, 2008.

"**Counts Two and Five**

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

> "On June 12, 2008, at approximately 5:38 p.m., deputies were dispatched to the JD Market regarding a robbery in progress.
>
> "Upon arrival, contact was made with Jasveer Kaur, the victim. She reported that earlier in the evening, at approximately 5:30 p.m ., she was assisting a customer. A male subject, later identified as Derrick Antron Cartwright, the defendant, then entered the store with a silver colored handgun. The victim stated the defendant pointed the gun at her and said, 'Open, Open, Open.' The victim opened the cash register and stepped away. The defendant approached the register and removed an amount of currency. While the defendant was doing so, the victim jumped over the counter and ran to a safe area. Following this, the defendant fled from the store.
>
> "On November 21, 2008, detectives interviewed the victim. She positively identified the defendant as the subject who robbed her at gun point on April 25, 2008.
>
> "On December 2, 2008, the defendant was booked for related charges."
>
> **Defense Testimony**
>
> Appellant testified he purchased the lottery tickets in two separate transactions with an acquaintance named Tim. He described Tim as "[s]ix-one, brown skinned, bald head, medium build." Appellant denied robbing and striking Kaur in the JD Market.

(LD 4, pp. 3-4).

## **DISCUSSION**

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.   Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was

3

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000). Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500.  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001

4

(9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**III.  Review of Petitioner's Claims.**

The instant petition itself alleges the following as grounds for relief: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; and (3) improper concurrent sentence for assault.

**A.  Ineffective Assistance of Counsel**

Petitioner contends that he was denied his right to the effective assistance of counsel under the Sixth Amendment.  Specifically, Petitioner contends that his attorney failed to properly investigate and view the surveillance videotape from the convenience store, to locate its whereabouts, or to document whether it was destroyed.  Petitioner argues that the videotape, which was never presented at trial, could have exonerated him.  This contention is without merit.

///

1. Superior Court's Habeas Order.

The Superior Court rejected Petitioner's claim as follows:

The court has read and considered the petition for writ of habeas corpus filed April 7, 2011 from the California State Prison, Solano County, Vacaville[,] California. Petitioner is serving twenty years four months sentence for two counts of second degree robbery, assault with a firearm and an enhancement for use of a firearm P.C. sections 212.5 (c), 12022.53 (b) and 245. Counts four and five alleging 12021 (a) possession of a firearm by a felon were stayed pursuant to P.C. section 654(a).

A jury convicted petitioner of robbery and assault with a deadly weapon and also found the firearm enhancement true on March 10, 2009. A bifurcated proceeding before the court found true a prior prison enhancement stemming from a drug conviction in 2005 pursuant to P.C. section 667.5 (b). Petitioner appealed after the imposition of sentence, and the appellate court affirmed the conviction in its entirety save for amending the abstract of judgment to delete an erroneous concurrent sentence for use of a firearm in count three, which the court struck.

Petitioner contends that his counsel was ineffective because he failed to investigate the existence of a videotape which would have eliminated petitioner as the perpetrator. He also contends that the prosecution had possession of the videotape and failed to provide it to defense counsel as exculpatory evidence. Petitioner contends that the first videotape was erased by the victim.

He contends that the second videotape would exculpate him resulting in an acquittal or a reduction in the sentence. As we shall explain below, the court finds no merit in any of petitioner's contentions and denies the petition on the basis of other independent identification exclusive of the videotape.

The appellate court decision and the probation report corroborate the facts underlying the robberies. They occurred on two occasions – April 25, 2008 and June 12, 2008 at the J.D. Market.

On both occasions, the clerk Javender Kaur was ordered to hand over money. On the first occasion, petitioner received $150.00 in cash and petitioner took about 200 lottery tickets usable in the game Big Cheese.

Upon completion of the first robbery, petitioner struck Ms. Kaur on the back of the head with the silver .22 caliber handgun. The appellate court opined that this assault had an independent criminal objective and was not part of the robbery. Thus, this conviction under P.C. section 245 (a)(2) would not be stayed, and the sentence on count three was proper.

On the second occasion, June 13, 2008, petitioner entered the store ordering Ms. Kaur to open the cash register. He again displayed the silver .22 caliber handgun used in the first robbery, but did not strike her with it.

At the trial, Ms. Kaur identified petitioner as a frequent customer to the store. His modus op[e]randi was the same in both robberies in that he would enter the store about fifteen minutes prior to the robbery and pretend to purchase items. While there he had a shirt with paint splotches which was longer than the sweatshirt he wore during the robberies.

When he returned to rob the store, he wore a mask, a sweatshirt but Ms. Kaur could still identify him due to facial features around his eyes which were not covered by the mask as well as his voice. Petitioner was described as an African/American man about six feet tall weighing 200 pounds. In a photo lineup on or about November 9, 2008, Ms. Kaur positively identified

petitioner as the perpetrator of the robbery.

Another significant identifying factor was petitioner went to a Fastrip market between the robberies and tried to cash in the lottery tickets. The clerk at the Fastrip traced the lottery tickets back to the J.D. [M]arket, and there was a working video camera at that store. Petitioner was not wearing any mask or other disguises when attempting to cash in the lottery tickets. This fact was gleaned from the testimony of Kavin Brewer at petitioner's preliminary hearing. Det. Brewer conducted the interview on or about November 9, 2008 with Ms. Kaur. Det. Christopher Martin conducted the interview immediately after the first robbery on April 25, 2008.

Because petitioner only appealed the sentence, the appellate court did not dwell on identification of petitioner since he failed to raise that issue in an appeal. The court notes that failure to raise issues that should have been but weren't raised on appeal precludes habeas corpus relief. In re Dixon (1953) 41 Cal.2d 756, 759. The court finds no constitutional error which would provide an exception to the Dixon Bar. Id.

To prevail in a claim of ineffective assistance of counsel, petitioner must demonstrate that counsel's conduct fell below professional norms causing prejudice, in the absence of which would result in a probability of a change in the outcome. Strickland v. Washington (1984) 466 U.S. 668, 694. Ineffective assistance of counsel must be demonstrable reality not a figment of the imagination. In re Sixto (1989) 48 Cal.3d 1247, 1257. Petitioner alleges that counsel's failure to investigate the videotape constituted ineffective assistance of counsel. Generally, failure to investigate critical facts necessary to formulate a defense is ineffective assistance of counsel. People v. Jackson (1980) 28 Cal.3d 264, 289.

Petitioner contends that the first videotape was inadvertently erased by the victim, and the second videotape was poor quality when converted to compact disc. Petitioner contends that the second videotape would exculpate him presumably because it would fail to identify him as the robber.

However, petitioner presents no declarations of eyewitnesses who would rebut Ms. Kaur's independent identification aside from the videotape i.e. her recollection of appearance and voice and the positive identification at the photo lineup.

There is nothing petitioner presents to rebut a positive identification of him at the Fastrip where he had the clerk scan lottery tickets traceable to the J.D. Market. There are no declarations from the victim recanting any identification of him. In essence, nothing in the habeas corpus petition or the criminal file points to his innocence. In re Clark (1993) 5 Cal.4th 750, 766, In re Hall (1981) 30 Cal.4th 408, 421, 425. The fact showing innocence must fundamentally undermine the prosecution's case, not merely cast doubt upon it. Clark at 766, People v. Ebaniz (2009) 175 Cal.App.4th 142.

On September 16, 2010, James Coker wrote a letter to petitioner stating that all his investigation concluded prior to trial, and the prosecution turned over all discoverable material to him. Given the independent identification evidence we cannot find ineffective assistance of counsel since the conviction would have occurred absent the videotape. Counsel need not investigate unmeritorious claims. People v. Geddes (1991) 1 Cal.App.4th 448, 454. Petitioner is entitled to competent counsel not perfection. People v. Jackson (2009) 566 U.S. 173.

(LD 8, pp. 1-3).

### 2. Federal Standard.

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth

7

1  Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims are reviewed according to
2  Strickland's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v.
3  Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that
4  where a defendant has been actually or constructively denied the assistance of counsel altogether, the
5  Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does
6  apply where counsel is present but ineffective).

7  To prevail, Petitioner must show two things. First, he must establish that counsel's deficient
8  performance fell below an objective standard of reasonableness under prevailing professional norms.
9  Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must establish that he
10 suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional
11 errors, he would have prevailed. Id. at 694. A "reasonable probability" is a probability sufficient to
12 undermine confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could
13 have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151
14 F.3d 1170, 1173 (9th Cir.1998).

15 With the passage of the AEDPA, habeas relief may only be granted if the state-court decision
16 unreasonably applied this general Strickland standard for ineffective assistance.  Knowles v.
17 Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a
18 federal court believes the state court's determination under the Strickland standard "was incorrect but
19 whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan,
20 550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420.  In effect, the
21 AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state
22 court determination was erroneous, but also that it was objectively unreasonable.  Yarborough v.
23 Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state
24 court has even more latitude to reasonably determine that a defendant has not satisfied that standard.
25 See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was
26 unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway
27 courts have in reaching outcomes in case-by-case determinations").
28 ///

3. <u>Analysis</u>.

Here, the state court identified and applied the appropriate federal standard by referring to <u>Strickland</u>. Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was neither deficient nor prejudicial, was contrary to or an unreasonable application of <u>Strickland</u>. For the reasons discussed below, the Court concludes that it was not.

Petitioner has failed to establish either prong of <u>Strickland</u>. Regarding counsel's purportedly deficient performance in failing to discover and review the two "exculpatory" videotapes, Contrary to Petitioner's assertions, the record does not establish the videotape of the first robbery was ever in the possession of law enforcement, as it appears to have been erased by the victim before law enforcement was able to obtain it. Thus, Petitioner has not proved that law enforcement failed to turn over the tape to the prosecutors, or that the prosecutors failed to turn over the tape to the defense. Regarding the second tape, which apparently was transferred from videotape to a low-quality disc, it appears the digital version was of such poor quality that it had no evidentiary value to either side. Petitioner's attorney stated he reviewed all evidence turned over to him before trial. This suggests either the prosecution did not have the two tapes, or they were turned over to counsel and counsel did not consider them to have any value to the defense, or some combination of the two. Under these circumstances, the potential for exculpatory evidence being produced by reviewing the "erased" videotape and the "blurry" video, even assuming they were at one point in the possession of the police or prosecution, are little more than mere speculation by Petitioner. Such speculation cannot provide a sufficient legal basis to conclude that counsel's performance at trial was constitutionally defective. Hence, the first prong of <u>Strickland</u> has not been met.

Regarding prejudice, the Superior Court noted the victim positively identified Petitioner as the robber, that she recognized him as a regular customer of the store, that she recognized him by his voice and eyes even when though he wore a mask to hide his face, and that she had picked him out of a photographic lineup. Additionally, a high-quality videotape from another store clearly showed Petitioner attempting to cash lottery tickets that had been stolen in the original robbery. No defense witness ever impugned these multiple identifications of Petitioner as the perpetrator of the two robberies, none of the prosecution's witnesses recanted or deviated from their positive identifications of

Petitioner, and no alternative robbery suspects can be inferred from the evidence presented at trial. Given these circumstances, as the Superior Court observed, Petitioner would have been convicted regardless of whether or not the original videotapes had been located, turned over to defense counsel, and reviewed. Accordingly, neither prong of Strickland has been met and the claim should be rejected.

### B. Prosecutorial Misconduct

Petitioner next contends that the prosecution committed misconduct by failing to turn over to the defense a purportedly exculpatory videotape. This contention is also without merit.

#### 1. The Superior Court's Order.

The Superior Court rejected Petitioner's claim as follows:

> Petitioner's next contention of prosecutorial misconduct is also without merit. He claims that the prosecution failed to turn over to the defense the videotape which would have exculpated him[.] Petitioner fails to state that the prosecution in fact had possession of the allegedly exculpatory videotape, and he also fails to state how the absent videotape would exculpate him in the face of independent identification.
>
> At this point, petitioner's only remedy, if true, would be seeking a post-conviction discovery order under P.C. Section 1054.9. Under P.C. Section 1054.1, the prosecution must turn over inculpatory and exculpatory evidence it has. Failure to do so is not harmless error. Brady v. Maryland (1963) 373 U.S. 83. Now the trial is over, petitioner must seek post-conviction discovery under P.C. Section 1054.9. He must identify specific material the prosecution failed to reveal at the trial. Harmon v. Superior Court (2010) 50 Cal.4th 850, 899. However, the material must be in the prosecution's possession. Id.[;] In re Steele (2004) 32 Cal.4th 682, 695-696.
>
> As petitioner admits, the first videotape was erased. However, the second videotape copy was converted to compact disc, and turned over to the defense according to the documents in the file. We find no discovery error by the prosecution warranting an issuance of an order to show cause.

(LD 8, pp. 3-4).

#### 2. Federal Standard.

Due process requires that the prosecution disclose exculpatory evidence within its possession. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Cooper v. Brown, 510 F.3d 870, 924 (9th Cir.2007). There are three components of a Brady violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). See also Banks v. Dretke, 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004); Silva v. Brown, 416

F.3d 980, 985 (9th Cir.2005).

A failure to preserve evidence violates a defendant's right to due process if the unavailable evidence possessed "exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). A defendant must also demonstrate that the police acted in bad faith in failing to preserve the potentially useful evidence. Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); Phillips v. Woodford, 267 F.3d 966, 986–87 (9th Cir.2001). The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed. Youngblood, 488 U.S. at 56–57 n. *, 109 S.Ct. 333; see also Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir.1997); United States v. Barton, 995 F.2d 931, 934 (9th Cir.1993); United States v. Cooper, 983 F.2d 928, 931 (9th Cir.1993). "The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation." Phillips, 267 F.3d at 987 (*quoting* United States v. Hernandez, 109 F.3d 1450, 1455 (9th Cir.1997)). See also Youngblood, 488 U.S. at 57, 109 S.Ct. 333.

   3. Analysis.

The Superior Court concluded that Petitioner had failed to establish that the second tape was ever in the possession of the prosecution, thus precluding any finding that prosecutorial misconduct had occurred. Petitioner's argument to the contrary rests exclusively on speculation and conjecture, since he does not know whether the tape was ever in the possession of the prosecution. Certainly, Petitioner has provided no evidence or testimony from any witness to that effect. Hence, this Court must accept the state court's factual findings because they do not in any way appear to be the result of an "unreasonable determination." 28 U.S.C. § 2254(d)(2).

Moreover, as the Superior Court pointed out, the second recording appears to have been of such poor quality that it had no probative or exculpatory value; hence, any failure to produce such evidence would necessarily be harmless. In this regard, the Court, following its earlier analysis of the Strickland claim, notes that overwhelming evidence identifying Petitioner as the robber on both occasions was presented to the jury. Under such circumstances, even if some technical Brady violation occurred, the

Court is confident that, given the overwhelming evidence regarding identification, any such violation did not have "a substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623. Accordingly, any error was harmless.

### C. Illegal Sentence

Finally, Petitioner claims that the trial court's imposition of a four-year concurrent sentence on the assault charge was improper. This contention too is without merit.

#### 1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

Appellant contends the trial court imposed an unauthorized concurrent sentence on count 3 because the force used in the robbery charged in count 1 was the same force underlying the assault charged in count 3. He maintains the sentence on count 3 should have been stayed under section 654.

**Allegations of the Information**

The information alleged in relevant part:

> "Count: 001, on or about April 25, 2008, Derrick Antron Cartwright, did willfully and unlawfully take personal property in the possession of Jasveer Kaur, from his or her person or immediate presence and against his or her will, by means of force or fear, within the meaning of Penal Code section 212.5(c), a felony.... [¶] ... [¶]
>
> "Count: 003, on or about April 25, 2008, Derrick Antron Cartwright, did willfully and unlawfully commit an assault on Jasveer Kaur, with a firearm, to wit: a handgun, in violation of Penal Code section 245(a)(2), a felony...."

**Recommendation of the Probation Officer**

The probation officer recommended a consecutive term on count 3, stating:

> "As to Count Three, it is felt consecutive sentencing is also justified. While the assault occurred on the same occasion as the robbery in Count One it appears to be a separate act of violence and had a different criminal intent. The defendant had already accomplished the fruits of his robbery and was in possession of the stolen money and lottery tickets when he chose to assault the victim. The assault was not necessary or incidental to committing the robbery; therefore, consecutive sentencing is justified."

**The Sentencing of Appellant**

At the April 10, 2009 sentencing hearing, the trial court stated:

> "I did consider with regard to the probation officer's recommendation that Count 3 be consecutive. I did consider that recommendation. And considering all the circumstances of this case, taking into account all of the objectives that the Court must consider at the time of sentencing-and, obviously, punishment is one factor. Protection of the community is another factor. Consistency of sentences.

> "And in considering the evidence that related to the assault, that resulted in the Count 3 conviction.... [¶] ... [¶]
>
> "And so I am going to find that, basically, it resulted in minor injuries to the victim in that case.... [¶] ... [¶] So my tentative is that that is a sufficient period of time of incarceration to accomplish all the goals of sentencing. And my tentative is to run Count 3 concurrent to Count 1."

The court ultimately sentenced appellant on count 3 in the following manner:

> "As to Count 3, probation is denied. Defendant is sentenced to the Department of Corrections for the upper term of four years. Said sentence to be served concurrent to the sentence imposed above, for a total fixed term of 20 years four months."

## Facts Elicited at Trial

Jasveer Kaur testified that she worked as a cashier at the JD Market at Sterling and Niles Streets in Kern County. Kaur was on duty at the store during the 8:00 p.m. hour on April 25, 2008. Appellant, a regular customer, entered the store dressed in a black t-shirt covered with paint stains at the bottom, shorts, and soft white-and-blue shoes. Appellant purchased a beer, looked around the store, and then departed. Appellant returned 10 to 15 minutes later armed with the gun.

On the second visit to the store, appellant was wearing a black shirt but it appeared longer. He was also wearing a brown, hooded sweatshirt on top and was hiding his face with some sort of ready-made mask. The mask completely covered the face with the exception of the eyes. Kaur said appellant came straight to the counter and showed Kaur a small, silver-colored gun. Appellant pointed the gun at Kaur and with the other hand pointed toward the cash in the register. She opened the register, moved backwards, and stood in place. At that point, appellant was located on Kaur's left side.

Appellant picked up money from the register, looked at the shelves below the register, and then approached Kaur. She moved backwards and turned around. Appellant took an unidentified object and hit the left-hand side of the rear of Kaur's head. Appellant then picked up some cash and lottery scratchers. Kaur ran outside and appellant followed her out of the store. He walked or ran to the next street. Kaur was in tears and feeling a lot of pain in her head. She called her boss, who arrived at the store and summoned police. Kaur's boss took her home and she was still upset and crying. Kaur spoke to an officer that evening, explained what happened, and gave the officer a description of the assailant. Detective Kavin Brewer interviewed Kaur in November 2008 and showed her a photographic lineup. Kaur identified a photograph of appellant as that of the robber.

## Applicable Law

Before determining whether to impose concurrent or consecutive sentences on all counts on which a defendant was convicted, the court must determine whether the proscription in Penal Code section 654 requires a stay of imposition of sentence on some of the counts. (Cal. Rules of Court, rule 4.424.) Section 654, subdivision (a) provides, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Concurrent sentences can violate section 654, subdivision (a). (People v. Garcia (2008) 167 Cal.App.4th 1550, 1564.) Under the plain language of the statute, multiple punishment may not be imposed for a single "act or omission." (§ 654, subd. (a).) In addition, however, section 654 prohibits multiple punishment

for multiple acts which comprise an "indivisible course of conduct." (People v. Hester (2000) 22 Cal.4th 290, 294.)

A course of conduct is "indivisible" if the defendant acts with "a single intent and objective." (In re Jose P. (2003) 106 Cal.App.4th 458, 469.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (People v.. Harrison (1989) 48 Cal.3d 321, 335.) Separate objectives may be found when "the objectives were either (1) consecutive even if similar or (2) different even if simultaneous." (People v. Britt (2004) 32 Cal.4th 944, 952.)

Section 654 bars multiple punishment for conduct that violates more than one statute but constitutes an indivisible course of conduct. (People v. Liu (1996) 46 Cal.App.4th 1119, 1135.) "The divisibility of a course of conduct depends upon the intent and objective of the defendant." (Ibid.) If all the offenses are incidental to one objective, the defendant may be punished by any, but only one, offense. On the other hand, if the defendant entertained multiple, independent objectives, the trial court may punish each violation notwithstanding shared common acts or otherwise indivisible conduct. (Ibid.) " '[T]he fact certain acts are proximate in time is not determinate [sic ] in finding an indivisible course of conduct. Multiple criminal objectives may divide those acts occurring closely together in time. [Citation.]' " (People v. Chacon (1995) 37 Cal.App.4th 52, 67.)

An appellate court reviews section 654, subdivision (a) multiple sentencing issues for substantial evidence. (People v. Garcia, supra, 167 Cal.App.4th at p. 1564.) "The question of whether the defendant held multiple criminal objectives is one of fact for the trial court, and, if supported by any substantial evidence, its finding will be upheld on appeal." (People v. Herrera (1999) 70 Cal.App.4th 1456, 1466.) The trial court "is vested with broad latitude in making its determination. [Citations.]" (People v. Jones (2002) 103 Cal.App.4th 1139, 1143.) The court's findings may be either express or implied from the court's ruling. (People v. McCoy (1992) 9 Cal.App.4th 1578, 1585.) Our review of those findings is made "in the light most favorable to the respondent and [we] presume the existence of every fact the trial court could reasonably deduce from the evidence." (People v. Jones, supra, 103 Cal.App.4th at p. 1143.)

**Analysis**

Appellant contends the robbery in count 1 consisted of taking both the money in the cash register and the lottery tickets. He goes on to argue:

> "The taking of the money from the cash register occurred before Kaur was assaulted, and the taking of the lottery tickets happened after the assault. Counts one and three shared the common objective of taking property from the victim, Kaur. The force used to commit the robbery of the money and lottery tickets was the same force used to assault Kaur. The assault was part of one indivisible course of conduct to further the robbery. Under these circumstances, appellant cannot be punished twice for the same indivisible transaction. The sentence on count three should have been stayed."

Respondent maintains appellant "essentially completed his initially planned robbery by having Kaur open the register and appellant taking the money." Respondent submits it was not necessary for appellant to strike Kaur to take the lottery scratchers. Respondent therefore concludes appellant's intent and objective in striking Kaur was separate from his intent and objective in robbing Kaur. The parties cite a number of cases to illustrate the difference between separate and distinct acts and an indivisible course of conduct. However, California courts have held each case involving section 654 must be determined on its own circumstances. (People v. Hutchins (2001) 90 Cal.App.4th 1308, 1312.)

> The crime of robbery (§ 212.5, subd. (c)), as charged in count 1, and the crime of assault with a firearm (§ 245, subd. (a)(2)) charged in count 3 entail two separate and distinct intents. Robbery is a specific intent offense. (In re Albert A. (1996) 47 Cal.App.4th 1004, 1007-1008.) Assault with a deadly weapon is a general intent offense. (People v. Tran (1996) 47 Cal.App.4th 253, 261.) More specifically, robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will accomplished by means of force or fear. The intent to steal must be formed either before or during the commission of the act of force. (People v. Tafoya (2007) 42 Cal.4th 147, 170.) The specific intent required for robbery is the intent to permanently deprive. (People v. Dominguez (1995) 38 Cal.App.4th 410, 417.) In contrast, assault entails the general intent to willfully commit a battery, an act which has the direct, natural and probable consequences, if successfully completed, of causing injury to another. (People v. Lee (1994) 28 Cal.App.4th 1724, 1734; People v. Page (2004) 123 Cal.App.4th 1466, 1472.)
>
> Here, as a matter of law, the crime charged in count 1 entailed an intent separate and distinct from the intent underlying the crime charged in count 3. Further, from the facts outlined above, the trial court could reasonably conclude that appellant robbed Kaur to permanently deprive her of the cash register proceeds and primarily struck Kaur to prevent her from summoning help after he left the store. In other words, the trial court could reasonably determine that appellant's intent in striking the blow was not to permanently deprive her of additional valuables, i.e., the lottery scratchers, but to commit a battery against her person. Moreover, given the chronology articulated by Kaur, the trial court could reasonably infer that appellant committed the act of force against her and then formed the intent to steal the scratcher tickets. Given that construction of the sequence of events, the striking of the blow and the subsequent taking of the scratchers could not be deemed part of the robbery charged in count 1. Although appellant protests to the contrary, we must review under the substantial evidence standard the court's factual finding, implicit or explicit, of whether there was a single criminal act or a course of conduct with a single criminal objective. (People v. Moseley (2008) 164 Cal.App.4th 1598, 1603.)
>
> Jasveer Kaur's testimony supplied substantial evidence to support the trial court's implicit finding that appellant engaged in a course of conduct with multiple criminal objectives. The court did not err in imposing a concurrent term of imprisonment on count 3 and modification of the sentence is not required.

(LD 4, pp. 4-12).

        2.  <u>Analysis</u>.

Petitioner contends that the state courts misinterpreted and misapplied <u>California</u> sentencing laws; however, such claim is not cognizable by way of § 2254. The basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states that the federal courts shall entertain a petition for writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States. <u>See also</u>, Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court. The Supreme Court has held that "the essence of habeas corpus is an attack by a person in

custody upon the legality of that custody . . ." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Further, in order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must demonstrate that the adjudication of his claim in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

As Respondent correctly points out, Petitioner did not allege a violation of the Constitution or federal law in his petition for review in the California Supreme Court, nor did he argue that, as a result of this claim, he is in custody in violation of the Constitution or federal law. Petitioner did not allege that the adjudication of his claims in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, . . . or resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254.  Instead, Petitioner argued that the state courts erroneously failed to apply California Penal Code § 654, resulting in consecutive sentences.  As such, this claim raises only a state law claim, and, generally, issues of state law are not cognizable on federal habeas review.  Estelle v. McGuire, 502 U.S. 62, 67 (1991)("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993)(O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Clemons v. Mississippi, 494 U.S. 738, 739-740, 110 S.Ct. 1441 (1990) (federal court has no basis for disputing a state's interpretation of its own law.)

Issues of state law sentencing errors generally are not cognizable on federal habeas review, unless the petitioner claims a deprivation of due process or equal protection due to the misapplication of the sentencing law. See Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993), cert. denied, 115 S.Ct 290 (1994); Featherstone v. Estelle, 948 F.2d 1497, 1500 (9th Cir. 1991); Estelle v. McGuire, 112 S. Ct. 475, 480 (1991) (holding that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); Miller v. Vasquez, 868 F. 2d 1116, 1118-19 (9th Cir. 1989) (refusing to address sentence enhancement claim).  Indeed, a determination of state law by a state appellate court, as occurred here, is binding in a federal habeas action, Hicks v. Feiock, 485 U.S. 624,

629, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), unless the interpretation is an "obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691 n. 11, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)(emphasis supplied); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (federal habeas court must respect a state court's application of its own law and must not engage in de novo review). No such subterfuge appears in this record. Thus, the issue related to whether California Penal Code § 654 was properly applied to Petitioner's case fails to raise a cognizable federal habeas corpus claim. Accordingly, the Court recommends that the claim be rejected on this ground.

However, a criminal defendant is entitled to due process at sentencing. Gardner v. Florida, 430 U.S. 349, 358, 979 S. Ct. 1197 (1977). Federal courts must defer to a state court's interpretation of state sentencing laws. Bueno v. Hallahan, 998 F. 2d 86, 88 (9th Cir. 1993). "Absent a showing of fundamental unfairness," a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F. 3d 461, 469 (9th Cir. 1994). As a threshold matter, the court must determine whether Petitioner has alleged that his sentence is fundamentally unfair.

Petitioner's contention is that the force used in the assault on the victim during the robbery was for the purpose of furthering Petitioner's unlawful taking of the cash from the register and the lottery tickets. Thus, under Petitioner's reading of California sentencing law, because Cal. Pen. Code § 654 bars multiple punishments for the same act, Petitioner cannot be sentenced separately for the assault, as distinct from the robbery. However, the state courts, interpreting their own state laws, concluded that the assault was not for the purpose of taking the money and lottery tickets but to discourage the victim from pursuing Petitioner, hindering his escape, or notifying the authorities. As such, it was a separate and distinct crime, i.e., assault, from the unlawful taking, i.e., robbery.

As discussed above, this Court is in no position to second-guess the California state courts in interpreting their own statutes. The Court's only purpose here would be to determine if, somehow, such a construction of the California sentencing laws could be considered "fundamentally unfair" under the federal constitution. Apart from his contention that § 654 should have applied because the assault was in furtherance of the robbery, Petitioner offers no justification for concluding that a contrary interpretation of § 654's applicability would constitute a violation of Petitioner's federal due process

rights, and the Court can find no such justification.  Accordingly, the Court concludes that the state court's adjudication of this issue simply does not rise to the level of being fundamentally unfair. Hence, no due process violation occurred. Therefore, this claim should be rejected.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be DENIED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 21 days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within 10 court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 9, 2014**         /s/ Jennifer L. Thurston
                                       UNITED STATES MAGISTRATE JUDGE